In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2081

ERIC GRANDBERRY,

*Petitioner-Appellant*,

*v.*

BRIAN SMITH, Superintendent, Plainfield Correctional Facility,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:11-cv-0186-WTL-WGH — **William T. Lawrence**, *Judge*.

ARGUED MAY 23, 2014 — DECIDED JUNE 10, 2014

Before BAUER and EASTERBROOK, *Circuit Judges*, and ST. EVE, *District Judge*.[*]

EASTERBROOK, *Circuit Judge*. While Eric Grandberry was the head inmate law clerk at Indiana's Putnamville Correctional Facility, he used computers to download legal materi-

---

[*] Of the Northern District of Illinois, sitting by designation.

als for other prisoners. He also assisted the prison's employ-ees. The prison's librarian asked him to obtain and fill out a petition to stop child support, and another member of the library's staff asked him to obtain and fill out forms that her daughter could use to apply for a divorce. Grandberry ful-filled these requests.

In April 2011 the prison sent the library's computers to the Indiana State Police Crime Lab for analysis. Data recov-ered from the hard drives showed what Grandberry had done. He was moved to solitary confinement and charged with administrative offense 207, "Possession of Electronic Device." This designates as an infraction the "[u]nauthorized alteration, use or possession of any electronic device … . (This offense includes accessing computers, software, the In-ternet, a facility LAN, etc. or using such in a manner not au-thorized by the Department of Correction … .)" A discipli-nary officer revoked 30 days of his good-time credits.

Grandberry sought federal review under 28 U.S.C. §2254. After the district court denied the petition, a panel of this court concluded that he did not need a certificate of appeal-ability. *Grandberry v. Keever*, 735 F.3d 616 (7th Cir. 2013). Alt-hough every other court of appeals that has considered the subject would require a certificate in a case arising from the revocation of good-time credits, see *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc) (collecting authority), the panel declined Indiana's request to overrule *Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000). The appeal was then briefed and argued on the merits.

Grandberry contends with some force that the prison did not use all constitutionally required procedures. See *Wolff v. McDonnell*, 418 U.S. 539 (1974). He also contends that the

charge against him is not supported by evidence—and as that argument, if accepted, would prevent the prison from holding a second hearing, we start there. We end there too, because the record does not contain evidence that Grandberry used the library's computers without authorization. *Superintendent of Walpole v. Hill*, 472 U.S. 445 (1985), holds that the Constitution allows a state to revoke good-time credits only when "some evidence" supports the decision. That's not a high standard: the Court observed that it entails less than the "substantial evidence" standard commonly used in administrative law, and materially less than the "beyond a reasonable doubt" standard used in criminal proceedings. But there must be some evidence; here there is none.

True, Grandberry downloaded forms related to child support and divorce, even though these were outside his remit as assistant to prisoners who needed support with problems arising from their custody. But the offense of which he was accused entails the "unauthorized" use of a computer, including "accessing … the Internet … in a manner not authorized by the Department of Correction". Indiana concedes that employees of the prison directed Grandberry to do exactly what he did. His conduct therefore was authorized.

That follows from the way the word "unauthorized" normally is used. Prisons are not normal places and may employ words in abnormal ways. Indiana does not do this with the word "unauthorized," however. One part of the prison system's thick pile of regulations defines "authorized" as:

Any of the following:

- According to Department and facility rules, policies, procedures or directives;

- According to the direction or orders of a staff person;

- According to an established facility custom approved by the facility administration; or,

- With permission from an appropriate staff person.

Indiana Department of Correction Policy 02-04-101 III.D. Grandberry's conduct was "authorized" under the second and fourth definitions.

Indiana contends that Grandberry should not have followed the staff's directives. We assume that they ought not have asked him for help on matters outside the scope of their official duties. But how does that justify requiring Grandberry to spend an extra month in prison? The infraction he was found to have committed deals with *unauthorized* computer use. What he did was "authorized" under the regulation, which asks what orders or permissions the staff *actually* gave, not what orders or permissions they *should have* given. If Grandberry had not complied, he could have been disciplined for committing offense 347, "Refusing an Order", which prohibits "[r]efusing to obey an order from any staff member."

It is more than a little surprising to encounter an argument by a prison system that an inmate may be penalized for obeying an order by the prison's staff. Put to one side the question whether the Constitution allows a whipsaw under which a prisoner may be penalized whether or not he com-

plies with an order. Prisons regularly contend that prisoners must obey all orders. "Comply now and protest later" is a staple in prison life. It would ill serve the interests of the Indiana Department of Correction to tell prisoners (as the Department's appellate brief insists) that they are not only *entitled* but also *required* to disobey orders that should not have been given. In such a regime prisoners undoubtedly would become creative in finding justifications for disobedience. Far better to have a norm of compliance; then staff members, rather than the prisoners, get to decide in the first instance which orders are proper and must be followed. If the library staff gave Grandberry improper orders, the penalty should fall on the staff members.

Doubtless some orders are so outré that they must be rejected, even at the risk of being charged with insubordination. If the librarian had handed Grandberry a knife and told him to kill another inmate, he could have been penalized for complying rather than making a beeline for the warden and handing in the weapon. Official authorization is no defense to a charge of murder. Cf. *United States v. Bailey*, 444 U.S. 394 (1980) (discussing the defenses of duress and necessity in federal criminal law). Grandberry was charged not with violation of some unconditional norm such as "thou shalt not kill" but with unauthorized use of a computer; a staff member's authorization refutes that charge.

The original conduct report alleged that Grandberry used a computer to download pornography and tax forms as well as divorce and child-support documents. He does not contend that the library staff ordered or authorized him to do either of those things. But an investigatory report dated two weeks after the hearing concludes that both of those allega-

tions are unsupported. The state's brief in this court does not contend that the penalty could be justified on either of these grounds, and counsel's statement in oral argument that the state is not giving up on them comes too late. Arguments must be presented in the briefs; these were not and have been forfeited, leaving no evidence at all.

Indiana maintains that Grandberry failed to alert the district court adequately to his argument that he acted with official authorization. Perhaps so, but the state bears the principal responsibility. It refused to provide Grandberry with the full investigative report, so he could not be sure exactly what he supposedly did wrong. The prison's hearing officer stated that he found the report persuasive but did not so much as hint at its contents, leaving Grandberry in the dark when asking the district court for relief. Not until this case reached the court of appeals, and we appointed counsel to assist Grandberry, did the state disclose the full report—and then only to counsel. (Grandberry now has a redacted version, which is more than he was armed with in the district court.) Counsel's appellate arguments on Grandberry's behalf are more complete and focused than his *pro se* arguments in the district court, but he made a comprehensible due process argument and is entitled to elaborate on appeal. Cf. *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995); *United States v. Billups*, 536 F.3d 574, 578 (7th Cir. 2008).

The judgment is reversed, and the case is remanded with instructions to issue a writ of habeas corpus restoring Grandberry's good-time credits.